Stephen HARRISON, Patricia Harrison, and Stonebridge Management, Inc., Plaintiffs,

v.

Alwyn F. LUSE, Jr., Defendant.

Civ. A. No. 85–S–2599.

United States District Court, D. Colorado.

March 29, 1991.

Thomas Hill, Krabacher, Schiffer & Hill, P.C., Aspen, Colo., for plaintiffs.

Eugene Deikman, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER came on for trial on August 13, 1990 on the Defendant's Counterclaims against the Plaintiffs for outrageous conduct, malicious prosecution, and for attorneys' fees and costs pursuant to Fed.R. Civ.P. 11, 28 U.S.C. § 1927, and Colo.Rev. Stat. § 13–17–101 (1987 Repl.Vol.) for the bringing of a substantially frivolous and groundless action. Final arguments were heard on October 24, 1990 and the court took the matter under advisement. Having heard the testimony of the parties and the arguments of counsel during the three-day trial, having reviewed the substantial number of depositions and exhibits, and being fully advised in the premises, the court makes the following Findings of Fact, Conclusions of Law, and Order.

## FINDINGS OF FACT

During all times relevant to this litigation, Defendant Alwyn F. Luse and his wife were owners of units in the Stonebridge Inn, a condominium complex in Snowmass Village, Snowmass, Colorado. The Plaintiffs, Stephen and Patricia Harrison, also owned units at the Stonebridge Inn. The Harrisons were members of the Board of Directors of the Stonebridge Inn during the years 1982, 1983, and 1984. Mr. and Mrs. Harrison were also principals in the Plaintiff Stonebridge Management, Inc., a Colorado corporation. Stonebridge Management, Inc. was engaged as the management company for the Stonebridge Inn condominium complex from 1979 through October of 1987. The Harrisons were also principals in a Florida corporation known as Whitney Centers, Inc., which was controlled by another corporation known as Horizon Ventures, Inc., which in turn was wholly owned by the Harrisons.

The controversy giving rise to this case began in late March or early April of 1984 when Mr. Luse and his wife were vacationing at their condominiums. At this time, the Harrisons were managing the Stonebridge Inn. Mr. and Mrs. Luse were very disappointed in the way the complex was being managed and expressed their disappointment to the Harrisons. After returning to his home in late April of 1984, Mr. Luse wrote letters to the other owners of units at the Stonebridge Inn criticizing the Harrisons' management of the Stonebridge Inn. (Defendant's Exhibit F).

Mr. Luse then attended the directors meeting of the Stonebridge Inn Association, a non-profit corporation organized as an association of the owners for the formal management of the Stonebridge Inn complex. This meeting was held at the Stonebridge Inn on April 30, 1984. Mr. and Mrs. Harrison, other members of the Board, and several other owners attended the meeting. Mr. Luse expressed his opinions concerning the management of the Stonebridge, particularly concerning his perception that Stephen and Patricia Harrison had a conflict of interest which should disqualify them from serving on the Board of Directors of the Stonebridge Inn Association. At that time, the Harrisons and Stonebridge Management, Inc. controlled at least three votes out of the five-member board of the Stonebridge Inn Association.

Mr. and Mrs. Harrison believed that their ownership interest through Stonebridge Management, Inc. made it appropriate that they serve on the Board and take an active part in the management of the Stonebridge. The Harrisons attempted to con-

vince Mr. Luse and the other owners in attendance that they were working for the benefit of all the owners. As a result of the allegations made by Mr. Luse at the meeting, there was at least one heated verbal exchange between Stephen Harrison and Mr. Luse. Mr. Luse left the meeting convinced that he would run for a seat on the Board of Directors and, if elected, attempt to remedy the problems he perceived with respect to the Harrisons and their company, Stonebridge Management, Inc.

On September 18, 1984, Mr. Luse wrote a letter to the Board of Directors of the Stonebridge Inn Association, Mr. Ollie Fields, Ms. Pat Simeone, Mr. Belton Fleisher, Mr. Stephen Harrison, and Mrs. Patty Harrison, concerning a new contract for management of the Stonebridge Inn. (Defendants' Exhibit P). In that letter, Mr. Luse noted that the existing contract with the owners of the Stonebridge Inn Association terminated on September 30, 1984. He indicated that a new contract had been prepared by a committee appointed at the Board Meeting in April and would be considered at the next meeting of the Board. He raised several points for consideration prior to approval of the extended contract. First, he noted that the management company was owned and controlled by the Harrisons, who were members of the Board. He accused the Harrisons of an "extreme conflict of interest" and "conduct in the past ... considered ... as unprofessional." He indicated his concern about the management of the complex and the competence of the staff. He accused the management of "extreme arrogance and contempt for owners whose interest and trust they are supposed to give first consideration," harassment and intimidation of owners, obscenities, and filing of a lawsuit against one owner. He objected to the approval of the two-year contract under consideration. He represented that he was speaking not only for himself but for many of the owners with whom he had consulted and corresponded. Copies of the letter in question were sent to all the owners of units in the Stonebridge Inn. Mr. Luse sought to obtain a seat on the Board with a slate of directors who purportedly shared his views.

Mr. Luse and his slate of directors were elected to the Board of Directors in December of 1984.

The management agreement which had been the subject of the previous year's controversy came up for renewal in the summer of 1985. Mr. Luse, who by this time had been elected President of the Stonebridge Inn Association, was active in the operation of the Association. The Board, under his direction, sent out proposals in 1985 for a management contract. The Board received replies from several companies. Several meetings were held to discuss the management of the complex and the awarding of a new contract. A meeting concerning the management contract was held with representatives of the Plaintiffs' corporation, Whitney Centers, in Denver, Colorado on August 6, 1985.

After this meeting, the Board determined that the Harrisons and their company would not be offered the contract. The contract was instead offered to Village Property Management Company of Snowmass, Colorado. The Board then requested that the Harrisons and their management company vacate the premises. The Harrisons refused and in November of 1985, the Stonebridge Inn Association filed an action to evict them. This action was filed in the Pitkin County Court and was subsequently transferred to the Pitkin County District Court because of a counterclaim filed by the Plaintiffs. In the meantime, on October 7, 1985, Mr. Luse wrote to all of the owners of the Stonebridge Inn concerning the rental agreements on their individual units with Stonebridge Management, Inc. (Defendant's Exhibit S). Representing himself as President of the Stonebridge Inn Association, Mr. Luse advised the other owners as follows:

"... all owners are urged to advised S.M.I. immediately that their Rental Agreement and Apartment Services Agreement will terminate on October 31, 1985, with no automatic extension. This should be done to coincide with the termination of the Management Contract by the Board of Directors of the S.B.I. Association, Inc. on August 29, 1985.... The

new management company, contracted with by your Board for Association services only, will contact all owners for a new individual Agreement for rental and care of your unit(s) effective November 1, 1985.

Please execute and mail the statement to S.M.I. as soon as possible and call me if you have any questions."

Believing that Mr. Luse was attempting to interfere with the contractual relationship between their company and the owners, the Plaintiffs commenced litigation against Mr. Luse for defamation and interference with contract. That lawsuit was filed on November 20, 1985 in the Pitkin County District Court and became Case No. 85–CV–368. The Plaintiffs were represented by Thomas C. Hill and Herbert S. Klein of Klein, Seigle & Krabacher, P.C.. At some point, Mr. Klein left the firm of Klein, Seigle & Krabacher, P.C. and continued to represent the Plaintiffs as co-counsel with Mr. Hill of Krabacher, Schiffer & Hill, P.C. Mr. Klein eventually was allowed to withdraw from representation of the Plaintiffs on April 12, 1988 because he was to be called as a witness at trial.

Case No. 85–CV–368 was then removed to this court by petition filed by Defendant Luse on December 10, 1985. That complaint is the original complaint in the case now before the Court. Defendant Luse filed his Answer and original counterclaims on December 30, 1985.

Subsequent to the filing of the first lawsuit in Pitkin County, the Harrisons allegedly learned of other instances of defamation by Mr. Luse. Stephen Harrison then filed a second action for defamation in Pitkin County on December 11, 1985, Case No. 85–CV–383. (Defendant's Exhibit DD). This second action alleged that on or about December 15, 1984, Mr. Luse communicated defamatory statements to one or more Stonebridge Inn owners, including Arne Marthinsson.

Pursuant to a stipulation approved by Judge Carrigan on February 3, 1986, the Plaintiffs amended their complaint in Civil Action No. 85–C–2599 to withdraw the first and second claims for relief, to modify the third claim for relief, and to include the allegations set forth in the Second Amended Complaint in Case No. 85–CV–383. The Plaintiffs thereby retained the defamation claim in federal Civil Action No. 85–C–2599. The stipulation stated in pertinent part:

"Plaintiff Stephen Harrison shall further amend the Complaint to include the allegations and Claims for Relief set forth in case number 85CV383 in the District Court in the County of Pitkin and State of Colorado entitled *Stephen Harrison, Plaintiff versus Alwyn F. Luse, Defendant,* wherein it is alleged the Defendant published defamatory and slanderous statements regarding said Plaintiff."

In that stipulation, Plaintiff agreed to dismiss Pitkin County Case No. 85–CV–383 without prejudice. Plaintiffs also noted in that stipulation that "the Statute of Limitations pertaining to said claims for relief shall be deemed tolled as of the date on which the said action was filed in the said District Court, State of Colorado", thereby admitting that they were aware of the one-year statute of limitations for defamation claims, Colo.Rev.Stat. § 13–80–102 (1973). On February 13, 1986, Case No. 85–CV–383 was dismissed without prejudice. (Defendant's Exhibit DD).

Plaintiffs' Motion to Amend by Dropping Third Claim for Relief was filed in Civil Action No. 85–C–2599 on September 15, 1986. On September 18, 1986, Judge Carrigan permitted the amendment to drop the Third Claim for Relief. Plaintiffs filed their Second Amended Complaint on September 24, 1986, alleging two claims for interference with contract and abandoning any claims for defamation. Apparently, the Plaintiffs began to doubt that the statements made to the Marthinssons fell within the one-year period of the statute of limitations because the Marthinssons changed their account of the incident.

On November 6, 1986, Judge Carrigan dismissed the Plaintiffs' First Claim for Relief for interference with contract, leaving only the Second Claim for Relief and the three Counterclaims for trial. Ultimately, the Plaintiffs did not pursue their Second Claim for Relief for interference

with contract at trial because of a settlement that secured them a new management contract. The trial went forward on the Counterclaims alone. Mr. Luse's Second Amended Counterclaim, filed on April 18, 1988, was based upon two incidents: (1) the filing of the alleged frivolous and groundless Civil Action No. 85–C–2599 (Case No. 85–CV–368 before removal to federal court) and (2) the filing of Case No. 85–CV–383 for the alleged purpose of harassing, embarrassing, inconveniencing, and intimidating Mr. Luse.

## CONCLUSIONS OF LAW

*Claim for Attorneys' Fees and Costs*

█ Fed.R.Civ.P. Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose. *Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Fed.R.Civ.P. Rule 11, as amended in 1983, provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties, the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

█ Challenged conduct is evaluated under a standard of objective reasonableness, that is, whether a reasonable attorney admitted to practice before the District Court would file such a document. *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988). The attorney must "stop, look and listen" before signing a document subject to Rule 11. *Id.* [Quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir.1987)]. What constitutes a reasonable inquiry into the facts may depend upon the particular facts, as well as the time available to the signer for investigation; the extent of the attorney's reliance upon his client for the factual support of the document; the feasibility of a prefiling investigation; whether the signing attorney accepted the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues; and the extent to which development of the factual circumstances underlying the claim requires discovery. Fed.R.Civ.P. Rule 11 advisory committee's note; *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 875 (5th Cir.1988). As to the determination of whether a reasonable inquiry into the law has been made, a district court may consider the time available to the attorney to prepare the documents; the plausibility of the legal view contained in the documents; the pro se status of a litigant; and the complexity of the legal and factual issues raised. *Thomas,* 836 F.2d at 875–76.

█ Rule 11 is violated where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Once a violation of Rule 11 has been found, sanctions are mandatory, however, judges have broad discretion in choosing the appropriate remedy. *Thomas,* 836 F.2d at 877.

█ In addition to the sanctions provided by Rule 11, fees and costs may be

awarded pursuant to 28 U.S.C. § 1927, which provides that any lawyer who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under this statute, sanctions may be imposed where counsel persists in a position or in prosecution of a claim after it becomes clear that the position or claim is unfounded. *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir.1985), *aff'd in part, rev'd in part*, 850 F.2d 1373 (10th Cir.1988). The powers granted by § 1927 are an extension of the inherent authority of the courts to assess costs and fees against attorneys who act unreasonably, vexatiously, or in bad faith in connection with litigation, or in a manner which constitutes abuse of the judicial process. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–767, 100 S.Ct. 2455, 2463–2465, 65 L.Ed.2d 488 (1980). Bad faith may be found not only in the actions that led to the lawsuit, but also in the conduct of the litigation. *Piper*, 447 U.S. at 766, 100 S.Ct. at 2464.

Under Colorado law, a court may award reasonable attorneys' fees in any civil action of any nature. Colo.Rev.Stat. § 13–17–102(1) (1987 Repl.Vol.). The court *shall* award reasonable attorneys' fees against any attorney or party who has brought or defended a civil action, either in whole or *in part*, that the court determines lacked substantial justification. Colo.Rev. Stat. § 13–17–102(2) (1987 Repl.Vol.). Further, the court *shall* assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. Colo.Rev.Stat. § 13–17–102(4) (1987 Repl.Vol.). "Lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. Colo.Rev.Stat. § 13–17–102(4) (1987 Repl.Vol.).

A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or law in support of that claim or defense. *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984). A claim or defense is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *Western United Realty*, 679 P.2d at 1069. The factors to be taken into consideration in determining whether the action was frivolous or groundless include (1) the extent of efforts made to determine the truth of the claim before making such claim or during pretrial, (2) whether the party has prosecuted the claim in bad faith or abused the procedures set forth in the Colorado rules of civil procedure, and (3) whether the evidence of issues of fact was conflicting. *Pietrafeso v. D.P.I., Inc.*, 757 P.2d 1113, 1117 (Colo.App.1988). When a court determines that reasonable attorney fees should be assessed, it shall allocate the payment thereof among the offending attorneys and parties, jointly or severally, as it deems most just, and may charge such amount, or portion thereof, to any offending attorney or party. Colo.Rev.Stat. § 13–17–102(3) (1987 Repl.Vol.).

Plaintiffs argue that the defamation claim in this case was withdrawn on December 13, 1985, only 23 days after the suit was filed. The record of the Pitkin County District Court indeed indicates that, on December 13, 1985, a motion for leave to amend the complaint was filed by the Plaintiffs in Case No. 85–CV–368 and signed by the judge. (Defendant's Exhibit DD). Plaintiffs argue that this filing withdrew all defamation claims 23 days after the suit was filed. However, Case No. 85–CV–383 (Exhibit DD) was filed in Pitkin County almost contemporaneously with the motion for leave to amend the complaint in 85–CV–368. In addition, pursuant to the stipulation filed by Plaintiffs and approved by Judge Carrigan on February 3, 1986, the Plaintiffs retained the allegations of defamation from Case No. 85–CV–383 in

order to pursue those allegations in federal Civil Action No. 85–C–2599. Plaintiffs noted in that very stipulation that the statute of limitations for the defamation claims from Case No. 85–CV–383 was tolled. The effect of the stipulation was to transfer the defamation claims from Case No. 85–CV–383 into federal Civil Action No. 85–C–2599, after the Plaintiffs were aware of the statute of limitations for the defamation claims.

It was not until September 15, 1986, when the Plaintiffs filed their Motion to Amend by Dropping Third Claim for Relief in Civil Action No. 85–C–2599, that Mr. Luse had notice that Plaintiffs did not intend to continue to pursue the defamation claim. Only after Judge Carrigan permitted the amendment to drop the Third Claim for Relief and Plaintiffs filed their Second Amended Complaint on September 24, 1986, could Mr. Luse have been certain that Plaintiffs were abandoning their defamation claim. Mr. Luse was kept in the position of having to defend the defamation claim until the filing of Plaintiffs' Second Amended Complaint on September 24, 1986.

The court concludes that Mr. Luse is entitled, pursuant to Fed.R.Civ.P. 11 and Colo.Rev.Stat. § 13–17–101 et seq. (1987 Repl.Vol.), to compensation under the Third Counterclaim in his Second Amended Counterclaim for his attorneys' fees and costs associated with defending the defamation claim from the date that Plaintiffs and their counsel realized or should have realized that there was no valid defamation claim until the date that the defamation claim was finally dismissed. The court concludes that reasonable inquiry into the statute of limitations for the defamation claim should have occurred before the filing of Pitkin County Case No. 85–CV–368. And, despite Plaintiffs' representation that the defamation claim was dismissed 23 days after the filing of the complaint in Case No. 85–CV–368, the court concludes that the Plaintiffs transferred the defamation claims from Case No. 85–CV–383 into federal Civil Action No. 85–C–2599 after dismissing Case No. 85–CV–383. Plaintiffs and their counsel should have known

there was no valid defamation claim before the filing of the first complaint in Pitkin County on November 20, 1985 and after dismissal of Case No. 85–CV–383. All defamation claims were finally dismissed as of the filing of the Second Amended Complaint on September 24, 1986. Mr. Luse is entitled to compensation for his attorneys' fees and costs associated with defending the defamation claims from November 20, 1985 to September 24, 1986. The court concludes that Plaintiffs and their counsel, Herbert S. Klein and Krabacher, Schiffer & Hill, P.C., should be held jointly and severally liable for those fees and costs. The court declines to award fees or costs pursuant to 28 U.S.C. § 1927.

*Outrageous Conduct Claim*

■ Extreme and outrageous conduct is conduct which is so outrageous in character, and so extreme in degree, that a reasonable member of the community would regard the conduct as atrocious, going beyond all possible bounds of decency, and utterly intolerable in a civilized community. CJI–Civ.3d 23:2 (1988). Such outrageous conduct occurs when knowledge of all the facts by a reasonable member of the community would arouse that person's resentment against the defendant and lead that person to conclude that the conduct was extreme and outrageous. CJI–Civ.3d 23:2 (1988). Liability under the tort theory of outrageous conduct is found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970); *Montgomery Ward Co., Inc. v. Andrews,* 736 P.2d 40, 46 (Colo. App.1987). There is outrageous conduct where the actor desires to inflict severe emotional distress or knows that such distress is certain or substantially certain, and it is the totality of the circumstances that must be evaluated to determine whether outrageous conduct has occurred. *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292, 294 (Colo.App.1982).

A federal court hearing a case based on diversity jurisdiction must apply the law of the state's highest court. The Colorado Supreme Court has held that the plaintiff must prove outrageous conduct by a preponderance of the evidence. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1351 n. 7 (Colo.1988).

Although in many lawsuits the plaintiff believes that the defendant's conduct has been outrageous, recent decisions indicate that the tort of outrageous conduct is extremely limited. Discharge from employment, without more, is not outrageous conduct. *Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381, 384 (10th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989); *Therrien v. United Air Lines, Inc.*, 670 F.Supp. 1517, 1524–25 (1987). Discharge and alleged defamatory remarks do not support a claim of outrageous conduct. *Steinberg v. Thomas*, 659 F.Supp. 789, 795 (D.Colo.1986). An alleged claim of age discrimination does not state a claim for outrageous conduct. *Brezinski v. F.W. Woolworth Co.*, 626 F.Supp. 240, 244 (D.Colo.1986). Where an employee alleged that he terminated his previous employment and sustained other financial and emotional injuries in reliance on defendant's promise to hire him, and the promise to hire was not kept, he did not state a claim for outrageous conduct. *Covert v. Allen Group, Inc.*, 597 F.Supp. 1268, 1270 (D.Colo.1984). Where an employee was dismissed for business reasons and for no fault of his own, after having been on the job only ten days, the claim for outrageous conduct should not have been permitted to go to the jury. *Widdifield v. Robertshaw Controls Co.*, 671 P.2d 989, 991 (Colo.App.1983). Allegations by an employee of thirty-three years that his employer had willfully, wantonly, and maliciously fired him did not rise to the required threshold of outrageousness. *Rawson v. Sears, Roebuck & Co.*, 530 F.Supp. 776, 780–81 (D.Colo.1982). An employer's failure to follow its own personnel policies did not amount to outrageous conduct. *Churchey*, 759 P.2d at 1350–51. A high school coach's influence in the termination of a junior high school coach by communi-

cating that the coach had been convicted for child molestation was not extreme and outrageous conduct. *Lindemuth v. Jefferson County School District*, 765 P.2d 1057, 1059 (Colo.App.1988). Claims that a general manager participated in illegal and irregular practices and retained employees who were personally loyal to him but who were not necessarily qualified or performing satisfactory work did not describe outrageous conduct. *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 624 (Colo.App.1988). Breaching a duty not to reveal information concerning financial affairs could not be characterized as outrageous conduct. *Rubenstein v. South Denver National Bank*, 762 P.2d 755, 757 (Colo.App.1988). Where an employee had an on-the-job truck accident and his employer converted his personal property that was in the truck, provided no transportation home from the hospital, filed an accident report containing libelous statements concerning the employee's driving, and delayed filing his Worker's Compensation claim, such conduct was held not to be so extreme or outrageous as to permit recovery. *Dorr v. C.B. Johnson, Inc.*, 660 P.2d 517, 521 (Colo.App.1983). False advertising as to sales and profit history of a business on which plaintiff relied in purchasing the business was not outrageous. *First National Bank v. Collins*, 616 P.2d 154, 156 (Colo.App.1980).

The fact situations in the above-cited cases were often considerably more egregious than this case, but none were found to rise to the level of outrageous conduct. As the court noted above, the Defendant's Second Amended Counterclaim is based upon the filing of the alleged frivolous and groundless Civil Action No. 85–C–2599 (Case No. 85–CV–368 before removal to federal court), and the filing of Case. No. 85–CV–383 for the alleged purpose of harassing, embarrassing, and inconveniencing, and intimidating Mr. Luse. The court concludes that these incidents do not reach the threshold level of conduct necessary to support a claim for outrageous conduct. The fact situations in the cases that have found sufficient claims of outrageous con-

duct are far more egregious than this case. *See Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988) (claim for outrageous conduct stated where plaintiff alleged defendant Catholic priest, acting as a marriage counselor, engaged in sexual relations with married woman who sought marriage counseling from him); *Montoya By and Through Montoya v. Bebensee*, 761 P.2d 285 (Colo.App.1988) (claim for outrageous conduct should not have been dismissed where plaintiff alleged that an unlicensed psychologist, despite significant evidence to the contrary, reported that plaintiff had sexually abused his children); *DeCicco v. Trinidad Area Health Ass'n.*, 40 Colo.App. 63, 573 P.2d 559 (1977) (jury question presented where plaintiff alleged that defendants refused ambulance service to his critically ill wife, causing her death). Mr. Luse has not shown the Plaintiffs' conduct to have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Malicious Prosecution Claim*

■ A malicious prosecution action may be based on a prior civil action as well as a criminal action. *Walford v. Blinder, Robinson & Co., Inc.*, 793 P.2d 620, 623 (Colo. App.1990), *cert. dismissed by Keller v. Walford*, —— U.S. ——, 111 S.Ct. 452, 112 L.Ed.2d 433 (1990); *Slee v. Simpson*, 91 Colo. 461, 464–64, 15 P.2d 1084 (1932). To establish a claim for malicious prosecution, a plaintiff must prove by a preponderance of the evidence that the defendant was a party to or assisted in a criminal or civil proceeding against the plaintiff, that the proceeding was resolved in favor of plaintiff, that there was no probable cause for the proceeding, that the defendant was motivated by malice in instituting the proceedings, and as a result of the prior action the plaintiff was damaged. *Weiszmann v. Kirkland and Ellis*, 732 F.Supp. 1540, 1547 (D.Colo.1990); *Walford*, 793 P.2d at 623; *Sancetta v. Apollo Stereo Music Company, Inc.*, 616 P.2d 182, 183 (Colo. App.1980); *Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 272 P.2d 643 (1954); CJI–Civ.3d 17:1 (1988); Restate-

ment (Second) of Torts § 674 (1977). In a malicious prosecution suit, if any element of proof necessary to make out the plaintiff's cause is lacking, it is the duty of the court to enter judgment for the defendant. *O'Malley–Kelley Oil & Auto Supply Co. v. Gates Oil Co.*, 73 Colo. 140, 141–42, 214 P. 398 (1923).

The court concludes that Mr. Luse has not proven by a preponderance of the evidence every essential element of proof necessary to establish a claim for malicious prosecution.

ACCORDINGLY, IT IS ORDERED:

1. Judgment shall enter for the Defendant, Alwyn F. Luse, Jr., and against Plaintiffs Stephen Harrison, Patricia Harrison, Stonebridge Management, Inc. and their counsel, the law firm of Krabacher, Schiffer & Hill, P.C., and co-counsel Herbert S. Klein, jointly and severally, on the Third Counterclaim.

2. Judgment shall enter for the Plaintiffs and against the Defendant on the First and Second Counterclaims for outrageous conduct and malicious prosecution.

3. Defendant Luse is directed to submit within 10 days of the date of this Order an itemized affidavit of fees and costs during the period of time between November 20, 1985 and September 24, 1986 that are attributable to the defense of the defamation claims only.