Ernest LEWIS, Jose Alier, Joseph Arena, Bruce Barnwell, Edward Baronowski, Mickey Lo Bascio, George J. Bauer, Domenico Berardesca, Robert Bertone, Johnathan Blum, William Boehmer, Vito Di Bono, Edward Bottjer, Robert Brice, Charles Brown, E.J. Buchalski, Charles Campo, Anthony Carbone, Arnold Carlin, Edward P. Casale, Richard Charnow, John Clifford, Frank Colletti, Frank Cooke, Joseph J. Costa, Philip Cuiffo, J.D. Donato, Lawrence Donley, Richard Dreste, Robert Dreste, Frank Dushanowitz, Robert Eger, Ely Fallas, Dennis R. Gaglia, Leslie Gaglia, Hiraza M. Gialampoukis, Arthur Goldstein, Robert Gorski, Larry Harney, Jerry K. Hennig, William Hoare, Basil Hurgus, Lionel Inselberg, William Treanor, Dave Johnston, Arthur Jones, Billy Jones, William Jones, Dennis Jordan, Victor Voldemar, Joseph Koenig, Robert Ledee, Henry Leonhardt, William Lindstadt, Sidney Waldman, Joseph Manfre, Luis Manzano, Anthony De Marco, John De Marco, Richard Maskelony, Robert Meoli, Robert Moller, Ray Monahan, Salvatore Montalbano, John Mueller, Thomas Murphy, Anthony Nazzaro, Ralph Nazarro, Charles Nettles, Patrick Nolan, Joseph Pando, Frederick Pluschau, Richard Pluschau, Ralph Polverino, John Porter, Jr., John Pulaski, Domenick Rafanelli, James Rennick, Kenneth Rodden, Lawrence H. Ross, John Saladino, Kenneth Sawicki, Leonard Schulman, Filippo Simone, Robert E. Spahn, Jeff De Stefano, Steven De Stefano, John Stoehrer, Victor Tello, Theodore Freudenberg, John Wittman, Jr., And James Treanor, Plaintiffs–Appellees,

v.

Willie WHELAN, as President of Local 584, International Brotherhood of Teamsters, Defendant,

Tuscan Dairy Farms, Inc., Defendant–Appellant.

No. 487, Docket 96–7446.

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1996.

Decided Nov. 6, 1996.

Theodore O. Rogers, Jr., Sullivan & Cromwell, New York City (Robin D. Fessel, Holly H. Weiss, of counsel), for Defendant–Appellant.

Louie Nikolaidis, Lewis, Greenwald, Clifton & Lewis, New York City (Daniel E. Clifton, Lauren Esposito, of counsel), for Plaintiffs–Appellees.

Before VAN GRAAFEILAND, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Tuscan Dairy Farms, Inc. ("Tuscan") appeals from Judge Mukasey's decision holding Tuscan jointly and severally liable with the Milk Drivers & Dairy Employees Local 584 (the "Union") under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for violating the seniority provision of the multi-employer Milk Industry Collective Bargaining Agreement ("MIA"). This is the third appeal in this matter. We assume familiarity with all prior decisions.

We briefly summarize the background of the present appeal. After a four day bench trial, the district court found that Tuscan had breached its contractual obligations under the MIA and that the Union had breached its duty of fair representation to the plaintiffs, former workers at Liberty Farms Inc., a milk processing plant in Ozone Park, New York. *Lewis v. Tuscan Dairy Farms, Inc.*, 752 F.Supp. 116, 122–25 (S.D.N.Y.1990). These breaches occurred when Tuscan purchased the plant and, with the cooperation of Union President Willie Whelan, refused to dovetail the seniority of workers in Liberty Farms with the seniority of workers in Tuscan's other two plants, as required by Article

IV Section C of the General Rules of the MIA ("Rule IV C"). *Id.*

On Tuscan's first appeal, we remanded for reconsideration in light of the Supreme Court's opinion in *Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). *Alier v. Tuscan Dairy Farms, Inc.,* 979 F.2d 946, 948 (2d Cir.1992) (per curiam). The district court confirmed its decision on remand. *Lewis v. Tuscan Dairy Farms, Inc.,* 829 F.Supp. 665 (S.D.N.Y.1993). On the second appeal, we affirmed the Union's liability for breach of its duty of fair representation but remanded for a finding as to whether Tuscan breached the seniority provision of the MIA or was entitled to rely on Whelan's apparent authority to modify the seniority provision. *Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138 (2d Cir.1994). We also asked the district court, if it found that Tuscan had breached its obligations, either: (i) to apportion the liability between Tuscan and the Union based either on fault, according to the damage done by each party, or (ii) to hold the parties jointly and severally liable, if the court found that the Union and Tuscan participated in each other's breach. *Id.* at 1145–46.

The district court thereafter found that Tuscan did not reasonably rely on Whelan's authority to modify the seniority provision of the MIA. *Lewis v. Tuscan Dairy Farms, Inc.,* 907 F.Supp. 740, 743–45 (S.D.N.Y.1995). It further found that Tuscan and the Union participated together in a "deceitful dance" to conceal their agreement not to dovetail seniority from union members. *Id.* at 742. Accordingly, the court held Tuscan and the Union jointly and severally liable for damages and attorney's fees. *Id.* at 746–47.

On this third appeal, Tuscan argues that the district court erred in not crediting Tuscan's reliance on Whelan's apparent authority to alter the MIA and consequently erred in its apportionment of damages and attorney's fees. We disagree.

■ Tuscan claims that the district court mistakenly considered events occurring *after* Whelan had agreed to modify the MIA in finding that Tuscan could not have reasonably relied on Whelan's apparent authority at the time of the alleged modification. We

see no error in the district court's analysis. It reasoned that Tuscan's reliance could not have been in good faith because Tuscan and the Union actively concealed from union members the decision not to apply Rule IV C. The court logically viewed several events as demonstrating Tuscan's efforts to conceal: at a meeting that occurred on June 22, 1987, shortly after Tuscan's acquisition of Liberty Farms, two newly hired Tuscan executives (one of whom had been the owner of Liberty Farms) "actively misled [union members] about what was in store for them"; moreover, Tuscan never responded to its copy of a July 6, 1987 letter from plaintiffs' counsel to Whelan requesting enforcement of the seniority provision that showed plaintiffs' ignorance of any amendment to the MIA; nor did Tuscan ever reveal that an amendment to the MIA had been made in response to an August 6, 1987 letter from plaintiffs' counsel requesting enforcement of Rule IV C. *Id.* at 743, 744. While these events occurred after Whelan had informed Tuscan that it need not follow the seniority provision, they shed persuasive light on Tuscan's knowledge and intent at the time it claims to have been relying on Whelan's apparent authority. If Tuscan had in good faith relied on Whelan's authority to amend the MIA, it would not have perceived a need to actively conceal its agreement with Whelan.

Moreover, at trial, Tuscan argued an entirely different theory of why it did not have to apply the seniority provision; it claimed that the transaction with Liberty was a plant closing and not a merger, and therefore did not trigger Rule IV C. Tuscan did not claim that Whelan modified the MIA until the court found its plant closing theory meritless. Thus, Tuscan's initial trial theory—that Rule IV C remained in effect but did not apply—undermines its present claim that it relied on a modification of the MIA. The district court did not, therefore, clearly err when he found that, "beginning at least in June 1987 Tuscan participated in Whelan's duplicity, and thus could not have relied in good faith on Whelan's apparent authority to secure a waiver of Rule IV C." *Id.* at 746.

We also reject Tuscan's argument that the finding that Tuscan participated in the Union's breach of its duty of fair representation violated the law of the case doctrine. First, the doctrine is discretionary, not mandatory. *See North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 164–65 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1289, 134 L.Ed.2d 233 (1996). Second, the district court was correct in eliminating a seeming inconsistency in its prior findings: "the breaches by the parties were mutually dependent and agreed upon" and "Tuscan did not participate in the [U]nion's breach of the duty of fair representation." Indeed, the clarification was at our specific request. *Lewis*, 25 F.3d at 1146 (internal quotation marks omitted). Moreover, the law of the case doctrine does not bind us in reviewing Tuscan's role in this matter.

Consequently, the district court was correct in holding Tuscan and the Union jointly and severally liable for damages and attorney's fees. *See Bennett v. Local Union No. 66*, 958 F.2d 1429, 1440–41 (7th Cir.1992) (where the parties participate in each other's breaches, "it is no longer 'unjust' to hold either party accountable for the entire period of injury"); *Allen v. Allied Plant Maintenance Co. of Tenn.*, 881 F.2d 291, 298 (6th Cir.1989) (joint and several award appropriate for damages and attorney's fees where the employer and the Union "colluded" in the breach).

Tuscan also challenges the accrual of post-judgment interest as of the date the district court entered judgment against Tuscan on remand instead of the date of its original judgment against Tuscan. (The prejudgment interest rate appears to be higher than the post-judgment rate.) We disagree and affirm.

The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered. 28 U.S.C. § 1961(a). However, where there has been more than one judgment, Section 1961 is silent as to which judgment post-judgment interest accrues from. Rule 37, Fed. R.App. P., provides little additional guidance:

[U]nless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the district court. If a judgment is modified or reversed with a direction that a judgment for money be entered in the district court, the mandate shall contain instructions with respect to allowance of interest.

We have held that a judgment entered and then affirmed on appeal accrues interest from the date of the original entry. *See Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237, 241–42 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994). We have also held that we have the discretion to award post-judgment interest accruing from the original date of entry of an erroneous judgment corrected on appeal, rather than from the date of our mandate as to the error. *See Smith v. Nat'l R.R. Passenger Corp.*, 856 F.2d 467, 472–73 (2d Cir.1988). The issue now before us is when post-judgment interest begins to accrue where we have vacated the first judgment on appeal, and the district court has entered a second judgment on remand.

Other courts of appeals that have considered the issue have held that where the first judgment is vacated because it lacks a legal basis or requires further factual development, the vacated award should be treated as a nullity and post-judgment interest therefore accrues from the entry of judgment on remand. *See Cordero v. De Jesus–Mendez*, 922 F.2d 11, 16 (1st Cir.1990) ("In general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment."); *Hysell v. Iowa Pub. Serv. Co.*, 559 F.2d 468, 476 (8th Cir.1977) ("[i]nterest does not accrue on a vacated judgment"); *FDIC v. Rocket Oil Co.*, 865 F.2d 1158, 1161 (10th Cir.1989) (applying post-judgment interest after remand where the court of appeals reversed the district court's determination of liability).

We agree with the other circuits for the reasons given in their opinions and hold that Tuscan's post-judgment interest accrues from the date of entry of the judgment on remand. We therefore affirm.