9 F.3d 237
 27 Fed.R.Serv.3d 753
 ESTATE OF Northern J. CALLOWAY, individually and on behalf
of LMN Productions, Inc., Plaintiff,
v.
The MARVEL ENTERTAINMENT GROUP, A DIVISION OF CADENCE
INDUSTRIES CORPORATION, James Galton, Al Brodax, Michael S.
Klein, Luis Quiros, and, where necessary, LMN Productions,
Inc., Defendants-Third-Party Plaintiffs-Appellees,
v.
DUMLER & GIROUX, Shukat Co. Ltd., Scott Shukat, and Peter S.
Shukat, Esq., Third-Party Defendants-Appellees,
Ray L. LeFlore, as defendant on the Rule 11 award, Appellant.
 No. 1054, Docket 91-9118.
 United States Court of Appeals,
Second Circuit.
 Submitted Feb. 19, 1992.
Decided Nov. 9, 1993.
 
 Ray L. LeFlore, pro se.
 Robert B. McKay, New York City, Carney & McKay, for defendants-appellees The Marvel Entertainment Group, James Galton, Al Brodax, and Peter S. Shukat, Esq.
 Before: FEINBERG, NEWMAN, and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is the second appeal in this matter. After a remand, Judge Sweet reinstated monetary sanctions pursuant to Fed.R.Civ.P. 11 in the amount of $100,000 against the Estate of Northern J. Calloway. The court found Calloway's counsel, Ray L. LeFlore, jointly and severally liable for the sanction. LeFlore appeals. We affirm in part and vacate in part.
 
 BACKGROUND
 
 2
 We will not reiterate at length the background of this appeal because of the detailed description in our previous decision, Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1455-67 (2d Cir.1988), familiarity with which is assumed. We briefly recap the salient facts, however. In 1982, Calloway filed an action seeking $11 million in compensatory damages and punitive damages in an unspecified amount, in which he claimed willful copyright infringement of his motion picture script concept entitled The Skyrider. Appended to the original complaint as exhibits were documents purporting to be agreements between Calloway and several of the defendants ("the Agreements"). These Agreements posed a considerable obstacle to Calloway's claim, however, because they authorized the defendants to engage in the alleged infringing acts.
 
 
 3
 Thereafter, LeFlore signed an Amended Complaint and Calloway signed a supporting affidavit that disavowed the Agreements. They alleged that Calloway's signature was forged or was merely a facsimile affixed to the documents ("the facsimile claim"). A later version of the disavowal of the Agreements conceded that Calloway had signed them but alleged document tampering or "alterations" after he had signed them ("the white-out claim").
 
 
 4
 Relying upon the facsimile claim as detailed in an affidavit by Calloway and memoranda prepared by LeFlore, Judge Sweet denied a motion for summary judgment. Had the motion been granted, the complaint would have been dismissed. Shortly before trial, the facsimile claim was abandoned, and the white-out claim was asserted. At trial, the district court directed a verdict against Calloway regarding the white-out claim. The trial largely concerned a claim of oral misrepresentation that was itself belatedly raised, and the jury held against the plaintiff on all claims.
 
 
 5
 The defendants moved for Rule 11 sanctions. Rule 11 states that:
 
 
 6
 [e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the ... paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, of good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....
 
 
 7
 Fed.R.Civ.P. 11. Upon a violation of this rule, the court must impose sanctions. Id.
 
 
 8
 After a hearing on the Rule 11 motion, Judge Sweet determined that neither Calloway nor LeFlore had a good faith basis for making the facsimile claim. He therefore sanctioned Calloway $100,000, and, after initially sanctioning the law firm of Pavelic & LeFlore $100,000, modified the sanction against the firm to impose a $100,000 sanction against LeFlore, of which the law firm was jointly and severally liable with LeFlore for $50,000. See Calloway v. Marvel Entertainment Group, 650 F.Supp. 684, 688 (S.D.N.Y.1986).
 
 
 9
 Upon appeal, we affirmed the imposition of sanctions against LeFlore and Pavelic & LeFlore for pursuing the facsimile claim. We sua sponte reinstated Calloway's pro se appeal, which had been dismissed for failure to prosecute, and remanded to the district court for a determination as to whether the sanction imposed against Calloway should be reinstated or modified. We also remanded for a determination whether LeFlore should be jointly and severally liable for Calloway's sanction, either alone or with Pavelic & LeFlore.
 
 
 10
 Pavelic & LeFlore petitioned for, and was granted, certiorari in the Supreme Court. The Court held that only the individual attorney who signed papers, and not the attorney's law firm, could be sanctioned under Rule 11. Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989). This of course did not disturb the $100,000 sanction imposed against LeFlore, who had not petitioned for certiorari. Nor did it affect the remand to determine his joint and several liability for the $100,000 sanction against Calloway.
 
 
 11
 After our remand, Calloway died. The district court held a hearing and reinstated the $100,000 sanction against Calloway's estate and held LeFlore jointly and severally responsible for that sanction. 138 F.R.D. 646. The court awarded interest on this portion of the judgment from the original date of entry. LeFlore then filed this appeal to challenge the aggregate $200,000 sanction for which he is now liable.
 
 DISCUSSION
 
 12
 Relying primarily on Business Guides, Inc. v. Chromatic Communications Enter., Inc., 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991), LeFlore contends that he cannot be jointly and severally liable for the $100,000 sanction against Calloway's estate. However, nothing in Business Guides undermines our earlier decision that persons liable for Rule 11 sanctions may be jointly and severally liable. 854 F.2d at 1477.
 
 
 13
 In Business Guides, the Court held "that a represented party who signs his or her name bears a personal nondelegable responsibility to certify the truth and reasonableness of the document." Id. 498 U.S. at 547, 111 S.Ct. at 931. The responsibility of a signing client thus cannot be delegated to his or her attorneys, although as to matters of law the reasonableness of a client's signing of a paper may be based on advice of counsel. LeFlore argues that joint and several liability is inconsistent with the nondelegability of Rule 11 obligations. We disagree.
 
 
 14
 Business Guides does not preclude an attorney from being jointly and severally liable for papers signed by a party where the attorney has signed similar or supporting papers and the resultant abuse of judicial processes must be attributed to the offending papers as a whole. In the instant matter, LeFlore signed the amended complaint, and Calloway's affidavit in opposition to the motion for summary judgment was prepared by LeFlore and was in effect incorporated by reference in LeFlore's memorandum of law and reply memorandum. The amended complaint raised the facsimile claim, and the papers in opposition to the motion for summary judgment effectively prevented the dismissal of the complaint. See 854 F.2d at 1463. The Rule 11 violation was thus a coordinated effort, and joint and several liability is entirely appropriate.[1] Joint and several liability in no way relieves Calloway or his estate from his nondelegable obligations under Rule 11. While Business Guides might shed light on a claim for contribution, it has no bearing on the present issues.
 
 
 15
 On remand, Judge Sweet allowed LeFlore and a psychiatrist, Dr. Hugh F. Butts, to testify. LeFlore argues that we should vacate all the sanctions against him based on this testimony. We disagree. Our prior opinion stated:
 
 
 16
 The record demonstrates beyond argument LeFlore's indifference to whether the facsimile claim had a factual basis. When the original documents (textually identical to the exhibits to the original complaint) were produced by the defendants, they contained several minor changes involving the obvious use of white-out, which the district court quite properly deemed "insignificant and immaterial." Calloway v. Marvel Entertainment Group, 111 F.R.D. 637 at 647 n. 2 (S.D.N.Y.1986). It is conceivable that a reasonable lawyer viewing these documents for the first time would conclude that an inquiry should be made into the alterations. However, nothing on the face of these documents suggests the affixation of a facsimile signature or forgery.
 
 
 17
 LeFlore did not retain a handwriting or document expert until November 1984, more than one year after he signed the amended complaint and more than six months after writing the affidavit for Calloway stating that the signatures on the agreements were not genuine and filing other papers saying the contracts were "forged" and "signed by others." This expert, Pearl Tytell, compared the original set of documents with several checks bearing five of Calloway's genuine signatures. On the basis of this examination, she told LeFlore that all the agreements were "probably" signed by the same person and "possibly" by the signer of the checks. At trial, she testified that she never considered the signatures on the June 8 agreements to be facsimile signatures, nor did she know of any evidence that they were not genuine. Calloway's deposition was taken after Tytell had made an oral report to LeFlore. When Calloway stated in that deposition that he was relying upon an expert's opinion to support the facsimile claim, LeFlore knew that no such opinion existed and that the expert actually refuted the claim. Nevertheless, LeFlore declined to drop the claim.
 
 
 18
 Finally, we note that Calloway's testimony regarding the facsimile claim was inconsistent and sometimes unintelligible and that he may have been mentally ill. These facts hardly justify pursuit of the facsimile claim, however. A reasonable attorney would not pursue a claim of forgery based on such equivocal evidence from such an untrustworthy source. A sensitivity to an attorney's obligation not to press baseless claims would call for caution in such circumstances rather than the headlong and heedless pursuit of a claim of the most serious misconduct by another attorney.
 
 
 19
 854 F.2d at 1471-72 (footnote omitted). LeFlore's testimony on remand in no way undermines these conclusions. As has been his consistent practice with regard to the Rule 11 issues, see 854 F.2d at 1468, his testimony never mentioned the facsimile claim but instead referred only to the white-out claim. However, the facsimile claim was the sole basis for sanctions, and LeFlore's testimony is, therefore, irrelevant. Dr. Butts' testimony also added nothing of substance. Dr. Butts may have provided some insight as to Calloway's mental illness and periods of remission, but his testimony indicated little about Calloway's role in asserting the facsimile claim.
 
 
 20
 Nothing offered on remand warrants the vacating of sanctions against Calloway or LeFlore. The record supports Judge Sweet's finding that Calloway knew the facsimile claim to be baseless. The record also indicates that Calloway never provided LeFlore with a factual basis for the claim. In fact, LeFlore has never stated that Calloway provided him with such a basis, and, if Calloway had, the claim should have been dropped immediately after Calloway's deposition in which he testified that he believed his signatures were forged based on the opinion of a handwriting expert. LeFlore knew at that time that the handwriting expert did not support the facsimile claim yet did not withdraw it. As we held earlier, the failure to withdraw the claim at that time evidenced LeFlore's indifference throughout to whether the claim had a factual basis.
 
 
 21
 We are not unmindful of the size of the sanctions imposed on LeFlore or of the fact that sanctions in excess of an attorney's net worth may serve no useful purpose. For that reason, our prior opinion suggested that Judge Sweet might reduce the size of the sanctions imposed based on information concerning LeFlore's financial status. On remand, Judge Sweet invited LeFlore to submit a current financial statement. However, LeFlore declined the invitation and instead relied entirely upon a conclusory affidavit filed in 1987 as part of his opposition to the posting of a bond while moving for a stay pending appeal. As must have been obvious to LeFlore, this cursory response does not warrant a reduction of sanctions.
 
 
 22
 Relying again upon Business Guides, LeFlore argues that the sanctions constitute impermissible fee shifting. In that decision, the Supreme Court explained that Rule 11 sanctions do not "shift the entire cost of litigation; they shift only the cost of a discrete event." 498 U.S. at 553, 111 S.Ct. at 934. As we held in our earlier decision, however, the sanctions here were based on LeFlore's assertion of felonious conduct by Calloway's former lawyer. LeFlore never had any basis for the claim but asserted it in order to avoid a well-deserved grant of summary judgment. The size of the monetary sanction was commensurate with the egregious nature of the conduct, and the sanctions thus do not constitute impermissible fee shifting.
 
 
 23
 As part of this argument, LeFlore disputes whether the Rule 11 violations increased the defense costs of the Shukat defendants. The Shukat defendants were initially dismissed from the case but were brought back in as third-party defendants because of the meritless claims. The Shukat defendants thus deserve to receive a portion of the award.
 
 
 24
 Because Peter Shukat did not cross-appeal on the earlier appeal, LeFlore suggests that the addition of his joint and several liability for the sanctions imposed on Calloway's estate cannot redound to Shukat's benefit. We disagree. As noted, Rule 11 is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 409, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990). Rather it is intended "to maintain the integrity of the system of federal practice or procedure." Business Guides, 498 U.S. at 552, 111 S.Ct. at 934. The sanction can thus be imposed sua sponte by the court, and the district court can order the sanction to be paid into the court, see Fed.R.Civ.P. 11; Cooter & Gell, 496 U.S. at 408-09, 110 S.Ct. at 2462-63. Given the purpose of the rule and the wide discretion of the court, we see no barrier to awarding sanctions in the instant case to a party that did not cross-appeal.
 
 
 25
 LeFlore also contends that he is not liable for interest on the judgment from the original date of entry. To support his position, LeFlore cites Briggs v. Pennsylvania Co., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948), in which a jury verdict for the plaintiff was vacated by the district court. Following a reversal on appeal, the district court reinstated the verdict with interest accruing from the date of the verdict. The Supreme Court held that the district court had no power to impose interest from the date of the vacated verdict.
 
 
 26
 Briggs, however, is in part inapposite. With regard to the $100,000 sanction on LeFlore and his firm, the judgment was entered and affirmed on appeal. Thus, the judgment has been in existence and accruing interest since it was first entered, as required by 28 U.S.C. Sec. 1961 (1988).[2] See also Fed.R.App.P. 37; Mathis v. Spears, 857 F.2d 749, 760-61 (Fed.Cir.1988) (holding that interest runs from the date of the judgment authorizing the right to the award, not from the date of a later judgment establishing its exact amount).
 
 
 27
 An award of interest against LeFlore on the $100,000 sanction against Calloway poses a different question because the judgment imposing joint and several liability on LeFlore was not entered until November 1991. LeFlore's liability for interest accruing on a judgment from the judgment's original entry date is not consistent with Briggs because LeFlore was not jointly and severally liable for that judgment before November 1991. We therefore vacate the award of interest against LeFlore on the sanction on Calloway prior to the imposition of joint and several liability.
 
 
 28
 We therefore affirm in part and vacate in part. Costs to appellees.
 
 
 
 [1]
 LeFlore contends that Judge Sweet's ruling on remand was in error because it failed to comply with Business Guides' holding that "Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." 498 U.S. at 544, 111 S.Ct. at 929 (emphasis added). However, as Judge Sweet noted, we determined on the prior appeal that the offending papers signed by Calloway violated an objective standard of reasonableness. See 854 F.2d at 1474-75
 
 
 [2]
 Section 1961 provides in pertinent part that:
 Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of entry of the judgment....
 28 U.S.C. Sec. 1961 (1988).