119 F.3d 506
 38 Fed.R.Serv.3d 508
 Gerard A. SERRITELLA, Plaintiff,
v.
Paul MARKUM, an Illinois State Trooper, in his individual
capacity, Kevin Eack, Counsel to Terry Gainer, Director of
the Illinois State Police, in his individual capacity, Terry
Gainer, Director of the Illinois State Police, in his
individual capacity, et al., Defendants-Appellees.
Appeal of Richard L. STEAGALL, Appellant.
 No. 96-2697.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 6, 1997.
Decided July 9, 1997.
As Amended on Denial of Rehearing July 29, 1997.
 
 Thomas A. Keith, Office of the United States Attorney, Peoria, IL, for Defendants-Appellees.
 Richard L. Steagall (argued), Nicoara & Steagall, Peoria, IL, for Appellant.
 Mark T. Dunn, Dunn, Ulbrich, Hundman, Stanczak & Ogar, Bloomington, IL, pro se, Amicus Curiae.
 Before CUMMINGS, RIPPLE and ROVNER, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Plaintiff Gerard Serritella sued Illinois State Trooper Paul Markum and others under 42 U.S.C. § 1983 alleging that his August 9, 1993, arrest for speeding and driving under the influence of alcohol violated the First and Fourth Amendments. To our knowledge, no final order has been issued with respect to his claims. Instead, this appeal is by Richard Steagall, attorney for Serritella, claiming that a May 17, 1995, order imposing a sanction of censure against him was unjust. Steagall also appeals from a June 11, 1996, order imposing a $1,500 sanction.
 
 
 2
 The censure was for Steagall's including in his second amended complaint an allegation that Markum fabricated the evidence of probable cause to arrest Serritella (and thereby violated Serritella's Fourth Amendment rights) despite an earlier order (dated April 28, 1994) by the district court striking an identical claim from the first amended complaint as not stating a cognizable claim. The April 28 order granted the plaintiff 14 days to file an amended complaint "in accordance with the legal principles discussed in this order."
 
 
 3
 Steagall responded to the April 28, 1994, order with a motion to alter or amend that order in which he advised the court of his view that the order's ruling that fabrication of evidence is not a Fourth Amendment concern is erroneous and inconsistent with Supreme Court and Seventh Circuit precedent. Contemporaneously, Steagall filed a motion for extension of time to file a memorandum in support of his motion to amend, again highlighting to the court that the April 28 order contained "serious errors." He also submitted a motion for oral argument on the motion to alter or amend, stating that he was confused (apparently by the court's orders), that the court's ruling was "contradicted by all existing Supreme Court authority," and that oral argument was necessary to ensure that he fulfill his duty of bringing the applicable law to the court's attention. The district judge denied the motion for extension of time and subsequently indicated that that denial rendered the motion to alter or amend (and for oral argument) moot.[1]
 
 
 4
 In due course, Steagall filed a second amended complaint repleading verbatim the fabrication of evidence allegation stricken by the April 28 order, with respect to which the district court specifically directed plaintiff to replead "in accordance with the legal principles discussed in this order." Thereafter, the defendants in the underlying action moved for summary judgment, inter alia, on the Fourth Amendment claim, noting that the court had stricken the claim from the first amended complaint and that the law had not changed since the April 28 order. In response to the motion for summary judgment on this issue, Steagall submitted a brief in which he argued that "Defendants seek to perpetuate the error of this court's ruling in its April 28, 1994 Order that police 'fabrication of evidence raises no Fourth Amendment concerns.' " Steagall then proceeded in the brief to argue the merits of the issue once again, citing the same Supreme Court and Seventh Circuit cases that he cited to the court in his motion to alter or amend the April 28 order. Judge McDade granted summary judgment in favor of the defendants on the claim[2] and ordered Steagall to show cause why his conduct did not violate Rule 11(b)(1), stating:
 
 
 5
 [T]he Court finds that Plaintiff's refiling of an identical claim in the Second Amended Complaint subsequent to an Order filed by the Court striking the claim as not presenting a cognizable section 1983 claim is subject to Rule 11 sanctions under the Federal Rules of Civil Procedure. Plaintiff's insistence upon repleading a claim after rejection by the Court is the sort of conduct Rule 11 was meant to regulate. Under Rule 11(b)(1), the Court is disposed to find that Count B of Plaintiff's Second Amended [Complaint] was "presented for [the] improper purpose ... [of] caus[ing] unnecessary delay or needless increase in the cost of litigation."
 
 
 6
 Order (April 19, 1995) at 5.
 
 
 7
 Steagall responded to the order to show cause with a memorandum arguing that inclusion of the dismissed claim was necessary to preserve for appeal the issue of whether police fabrication of evidence to support a probable cause determination violates the Fourth Amendment. Steagall took the opportunity, once again, to recite his interpretations of Supreme Court and Seventh Circuit decisions, which, he maintains, support his view that the district court erred in dismissing his fabrication of evidence claim. After outlining the decisions in his response to the order to show cause, Steagall commented:
 
 
 8
 Plaintiff's counsel has twice attempted to obtain a specific ruling from this court on how its holding that fabrication of evidence by the police does not state a claim for the deprivation of the victim's Fourth Amendment [rights] that is actionable under Section 1983 can survive the aforementioned nine cases.
 
 
 9
 Some good may come of this Rule 11 proceeding, if the court finally does specify why the three decisions of the Supreme Court ... and the six decisions of the Seventh Circuit ... do not require alteration of the court's April 28, 1994 ruling reaffirmed in its April 13, 1995 order that fabrication of evidence by the police is not a deprivation of a person's Fourth Amendment rights remediable under 42 U.S.C. § 1983.
 
 
 10
 Response to Order to Show Cause at 8. He then addressed the district court's ruling that his motion to alter or amend the April 18 order was moot, commenting that he did not understand why the motion was moot insofar as he had not abandoned his claim and the controversy over the fabrication claim remained a live controversy. Id. at 10. He added:
 
 
 11
 [T]o ensure that the error of dismissal of the Fourth Amendment fabrication of evidence claim and the fact that the court has been specifically presented with the three Supreme Court cases and six Seventh Circuit cases was preserved for appeal, plaintiff's counsel again included the claim in the second amended complaint.
 
 
 12
 If the court refused to rule on the claim, and more importantly the applicability of the nine cases sustaining it, then it was the result of the court's avoidance of the issue, not any abandonment or waiver, which the mootness ruling suggested.
 
 
 13
 The claim was again considered in the second amended complaint, so there can be no question of mootness of the issue on appeal. Plaintiff's counsel has satisfied his duties as counsel in preserving the question, even though he has gained no answer as to why the court refuses to address the applicability of these nine cases.
 
 Id.[3]
 
 14
 Judge McDade found no merit in Steagall's various contentions and imposed a sanction of censure on him, concluding:
 
 
 15
 In the Court's view, counsel finds it difficult to accept adverse rulings. This is not the first time that counsel has been hostile to and openly disrespectful of opinions which go counter to his wishes. All too frequently during argument he will bluntly warn the court, presumably from a perception of superior knowledge about federal Constitutional issues, that decisions rendered are wrong and will be reversed on appeal. The Court does not appreciate such intimidating tactics and has cautioned counsel that it would not be moved by such threats of appeal. Counsel must realize that the Court--every court--does its best to make correct decisions and once made, counsel is expected to respect (hopefully gracefully) the decision and act accordingly.
 
 
 16
 In considering the nature of an appropriate sanction, the Court has decided that a censure is sufficient at this time to deter repetition of this type of conduct by counsel and others similarly inclined. The Court is aware that counsel is a seasoned and respected attorney. It is possible that he does not really understand or appreciate how unseemly his conduct and how--even if unintended--it shows disrespect for the courts and the administration of justice. Future transgressions will not be treated with this degree of leniency.
 
 
 17
 Order (May 17, 1995) at 3.
 
 
 18
 The underlying litigation continued and after discovery had been conducted, Steagall sought to add additional claims against Captain Karsted. Because the district court had granted summary judgment in favor of defendants on Serritella's conspiracy claim (the only claim naming Karsted as a defendant), Steagall filed a motion--on November 17, 1995--to alter or amend the April 19, 1995, summary judgment order, so as to allow him to assert the additional claims against Karsted. The motion to amend noted that "Plaintiff continues to believe that the court's April 19, 1995 order entering summary judgment in favor of defendants was reversible error for the reasons set forth in Part III of the Plaintiff's Notice of Additional Claims." Along with the motion to amend, Steagall submitted a notice of additional claims, which, as the name implies, set out the nature of and bases for the proposed additional claims. The notice of additional claims also included a section captioned "THE COURT'S APRIL 19, 1995, SUMMARY JUDGMENT ORDER WAS ERRONEOUS AND SHOULD BE VACATED." This section of the notice acknowledges that the court's April 19, 1995, order granting partial summary judgment is "law of the case until reversed"; nevertheless, Steagall took the opportunity to argue that the April 19 order was "reversible error" and that "the proper course is an order vacating that summary judgment orders of April 28, 1994 and April 19, 1995." He repeated once again his position that fabrication of evidence by the police constitutes a Fourth Amendment violation and he also advanced several reasons why the district court's April 19, 1995, order granting partial summary judgment was erroneous. In an order dated January 8, 1996, Judge McDade denied the motion to alter or amend because plaintiff failed to show why the purported newly discovered evidence could not have been discovered during the pendency of the summary judgment motion.
 
 
 19
 Steagall's next volley was to submit a motion to Judge McDade asking, inter alia, for the court to rule on whether the denial of plaintiff's motion to alter or amend the April 19, 1995, order precluded him from including the proposed new claims against Captain Karsted in the final pre-trial order.[4] Judge McDade responded with an order indicating that Steagall could not raise the issues in the final pre-trial order; rather, they could only be added to the litigation through amendment of the second amended complaint. Order (January 31, 1996) at 3. Steagall's motion to amend was denied by a magistrate judge who found that the motion was "untimely, not diligent, and [lacking] 'good cause.' " See 2/13/96 Minute Order. Steagall "appealed" the decision to Judge McDade, who affirmed on the same grounds. See 2/27/96 Minute Order. Next, Steagall filed a "Motion for Circuit Rule 50 Findings on Denial of Plaintiff's Motion for Leave to Amend Second Amended Complaint." The motion contained remarks such as:
 
 
 20
 The lack of specific findings, the absence of any valid objection to the proposed amendments, and the fact that both the Magistrate Judge and District Judge ruled on the motion without awaiting any response from the defendants raise serious questions about whether plaintiff has received the even handed application of the Federal Rules of Civil Procedure in this action that is his right.
 
 
 21
 * * *
 
 
 22
 The ultimate question to be asked is why is there such hostility to consideration of the merits of plaintiff's claim against Trooper Markum's supervisor, Captain Karsted, who if the claim is to be believed--as it must at this stage of the litigation--is the true cause of abuse of authority charged in the second amended complaint.
 
 
 23
 Motion for Circuit Rule 50 Findings at 2, 4.
 
 
 24
 Thereafter Judge McDade issued an order explaining that because plaintiff failed to show why he could not with reasonable diligence have discovered and produced the evidence regarding Captain Karsted during the pendency of the summary judgment motion, the motion to amend the second amended complaint was untimely, lacked diligence and was without good cause. Judge McDade further stated that Captain Karsted would be unduly prejudiced because the court's April 19, 1995, order granted summary judgment in favor of Karsted as to all claims asserted against him. Finally, Judge McDade issued the following warning:
 
 
 25
 [C]ounsel for plaintiff is advised that the Court finds it both unprofessional and tiresome to have its integrity regularly impugned--either directly or indirectly--by counsel in response to any adverse ruling made by the court as to plaintiff's case. Moreover, this is not the first time this Court has had to caution counsel in this regard. Again, counsel is reminded that if he concludes that the Court's judgments and decisions are legally incorrect, he should patiently utilize the appropriate channels of appeal. Counsel's continued pursuit of what the Court considers contemptuous conduct under Local Rule 1.3 will not be tolerated in the future.
 
 
 26
 Order (March 1, 1996).
 
 
 27
 Meanwhile, on February 15, 1996, the parties filed a final pre-trial order. In that order, Steagall included the proposed new claims against Karsted, notwithstanding Judge McDade's January 31, 1996, order instructing Steagall that the claims should not be included in the final pre-trial order. In addition to listing a number of factual issues relating to the proposed claims against Karsted, Steagall also identified as a contested issue of law, "Whether plaintiff's claims against Captain Karsted are properly before the court." Pre-Trial Order (Feb. 15, 1996) at 7. About two weeks later, Judge McDade issued a minute order setting a final pre-trial conference for March 22, 1996, directing the parties to file, by March 18, 1996, a revised pre-trial order deleting any claims against Karsted consistent with the court's prior orders, and restricting the disputed issues of fact to factual elements of the claim to be tried to the jury (i.e., Serritella's Fourth Amendment claim against Markum).
 
 
 28
 Steagall filed two motions to continue the final pre-trial conference, the first of which was granted (continuing the conference to May 24, 1996, with the revised final pre-trial order due on May 20, 1996). On May 21, 1996, Steagall filed a motion for leave to submit the revised final pre-trial order on May 22, 1996. That motion explained that Steagall had logistic difficulties preventing him from completing the revised order, and included the following statement: "The undersigned is satisfied with the Final Pre-Trial Order presently on file. It is capable of use even though the court will not allow plaintiff to proceed against Captain Karsted as a defendant at trial." Steagall requested that the district court either allow him to submit a draft of the revised order on May 22, 1996, or allow the previously filed pre-trial order to be used at trial. The court allowed Steagall to file the revised order on May 22. On that day, because the parties could not agree on the statement of contested facts or statement of contested issues of law, Steagall submitted two pre-trial orders, one prepared by him and the other prepared by defense counsel. Steagall's order again set forth facts relevant to the rejected claims against Karsted.
 
 
 29
 At the pre-trial conference, Judge McDade asked Steagall if he recalled the court's order requiring that claims against Karsted be deleted and the disputed issues of fact be restricted to the factual elements of the claims to be tried to the jury. Steagall responded: "Yes. And my pretrial order is my version of what I think the jury should hear, and until there's a motion in limine I am not going to back off that, or otherwise I would waive substantial rights of my client." After further colloquy with both counsel, Judge McDade concluded:
 
 
 30
 Well, this is very difficult for the Court because the Court expects counsel to comply with the Court's orders in good faith. And the Court isn't perfect. The Court makes mistakes, that's why we have appellate courts. But it seems to me from my examination of the old pretrial order and this pretrial order submitted by Mr. Steagall there's very little difference, and there has not been a substantial compliance with my order of February 27, 1996.
 
 
 31
 * * *
 
 
 32
 I've admonished you in the past about complying with the Court's order. I've censured you already for violating the Court's order. No, that isn't true, for a Rule 11 violation. And I've also previously admonished you that you may disagree with the Court but there is an appropriate way to disagree and that is by appealing the Court's decision at the appropriate time and not by the repeated efforts by you to circumvent or just simply to refuse to comply with the Court's lawful orders.
 
 
 33
 Transcript of May 24, 1996, Proceedings at 12-13. Thereafter the court issued a rule to show cause why Steagall should not be held in criminal contempt for his failure to comply with the court's February 27 order. The court also found that Rule 11 was implicated by Steagall's inclusion of the Karsted material because the court's time as well as that of the defendants had to be taken up in order to "deal with this issue of the final pretrial order which does not comply with the court's direction." Id. at 18. The court also found that Steagall's inclusion of the fabrication of evidence claim as a contested issue of law in the final pre-trial order violated Rule 11. Accordingly, the court directed Steagall to show cause why he should not be sanctioned under Rule 11.
 
 
 34
 On June 6, 1996, Steagall filed a response to the order to show cause. On June 11, 1996, the district court imposed a Rule 11 monetary sanction in the amount of $1,500 for including in the revised final pretrial order--after having been specifically directed by the district judge to delete them--"matters which have no bearing on the pretrial order and are not issues in the case for purposes of the pretrial order." Steagall now appeals that sanction as well as his May 17, 1995, sanction of censure.[5]
 
 ANALYSIS
 
 35
 We review the district court's imposition of sanctions under Rule 11 for abuse of discretion. Anderson v. County of Montgomery, 111 F.3d 494, 501 (7th Cir.1997).
 
 Appeal from May 17, 1995, order
 
 36
 The appeal from the May 17, 1995, order was through a notice of appeal filed by Steagall on July 8, 1996. Since that order was not appealed within 30 days as required by Federal Rules of Appellate Procedure (Rule 4(a)(1)), the appeal is dismissed as untimely.
 
 
 37
 Steagall attempts to overcome the untimeliness of this appeal by arguing that the May 17 censure order is inextricably intertwined with the district court's subsequent monetary sanction and that in order to review the latter (which we shall momentarily), we must review the former. This argument is meritless. Although the June 11 monetary sanction was preceded by the earlier censure order for similar conduct, the monetary sanction was not dependent upon the censure order. In the first place, quite separate conduct was involved. Moreover, there is no requirement that district judges employ a regime of progressive sanctions to get their points across to recalcitrant attorneys. As we have explained in the past (in circumstances involving more severe sanctions than were imposed here), "we have not found the imposition of less drastic sanctions to be an absolute prerequisite to the entry of a default judgment.... A district court is not required to fire a warning shot." Hal Commodity Cycles Management Co. v. Kirsh, 825 F.2d 1136, 1139 (7th Cir.1987). See also Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir.1991) ("Parties and counsel have no absolute entitlement to be 'warned' that they disobey court orders at their peril."). That Steagall chose to ignore Judge McDade's warnings does not make those warnings inextricably intertwined with the final blow. The censure order was complete and final in and of itself and if review was to be sought of that order it should have been timely sought.[6]
 
 Appeal from the June 11, 1996, order
 
 38
 The notice of appeal from the June 11, 1996, order was filed on July 8, 1996, and is timely. In this Circuit, an order imposing Rule 11 sanctions against an attorney for a party who has participated in pending litigation is immediately appealable. Frazier v. Cast, 771 F.2d 259 (7th Cir.1985). The Second, Eighth, Ninth and Eleventh Circuits are in accord.[7] Therefore we will proceed to consider this matter before final judgment in the Serritella case.
 
 
 39
 As the facts recounted above reveal, the sanction of $1,500 was imposed upon Steagall because he submitted a pre-trial order that was not in conformity with the explicit directions of Judge McDade. Indeed, plaintiff's counsel admitted that he raised issues which had been decided against him by the district court.
 
 
 40
 Judge McDade thoroughly explained the reasons why he imposed a $1,500 penalty. We quote his remarks at length because we fully concur with his appraisal of the issue:
 
 
 41
 This Court found in its May 17, 1995, Order disposing of the Rule 11 issue that Rule 11 sanctions were appropriate. A copy of the Court's May 17, 1995, Order is appended which explains why Rule 11 was violated and concluded that in consideration of clearly controlling law, the conduct by Mr. Steagall was presented for the improper purpose to harass or to cause unnecessary delay or needless increase in the cost of litigation. In defense of his conduct, Mr. Steagall argued that he had to reallege the claim in his Second Amended Complaint so that it would not be waived on appeal. The Court found that this was a spurious argument and had no support in law. Indeed the Court pointed out that "it was clearly decided in Bastian v. Petren Resources Corp., 892 F.2d 680, 682 (7th Cir.) cert. denied, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), that dismissed claims need not be included in an amended complaint because the final judgment brings up all previous rulings in the case." The Court went on to observe:
 
 
 42
 [C]ounsel finds it difficult to accept adverse rulings. This is not the first time that counsel has been hostile to and openly disrespectful of opinions which go counter to his wishes. All too frequently during argument, he will bluntly warn the Court, presumably from a perception of superior knowledge, about federal constitutional issues, that decisions rendered are wrong and will be reversed on appeal. The Court does not appreciate such intimidating tactics and has cautioned counsel that it would not be moved by such threats of appeal. Counsel must realize that the Court--every court--does its best to make correct decisions and, once made, counsel is expected to respect (hopefully gracefully) the decision and act accordingly.
 
 
 43
 In imposing a sanction, the Court only censured Mr. Steagall speculating that Mr. Steagall perhaps did not realize what he was doing and how unseemly his conduct, and how it showed disrespect for the Court and the administration of justice. The Court, however, issued a warning that "future transgressions will not be treated with this degree of leniency." Now, Mr. Steagall is back before the Court under analogous circumstances. Essentially, he has again replead matters which have no bearing on the pretrial order and are not issues in the case for purposes of the pretrial order. Again Mr. Steagall attempts to justify his conduct by arguing that such repleading is necessary to preserve the record. Obviously, Mr. Steagall did not get the message clearly transmitted by this Court earlier. Having been put on notice as to the inappropriateness of unnecessarily repleading issues which are no longer issues in the case, it is apparent counsel failed or refused to make sure of the legal basis for his treatment of the pretrial order as the means of preserving evidentiary issues for purposes of appeal. Obviously, a censure is not enough to coerce Mr. Steagall to comply with the dictates and spirit of Rule 11. Therefore, the Court hereby imposes a monetary sanction of fifteen hundred dollars ($1,500.00).
 
 
 44
 Order (June 11, 1996) at 10-11.
 
 
 45
 In basing his decision on the foregoing analysis, the district judge was well within his discretion in imposing Rule 11 sanctions and we conclude that the monetary sanction of $1,500 was appropriate. Steagall deliberately disregarded a proper direction by Judge McDade without any compelling justification for doing so, resulting in the needless expenditure of time (and therefore money) by both the parties and the court.
 
 Conclusion
 
 46
 The appeal from the May 17, 1995, order censuring appellant is dismissed as untimely. The June 11, 1996, order is affirmed.
 
 
 
 [1]
 It is unclear from the record why the district judge deemed the motion to alter or amend moot. Judge McDade's minute order of May 23, 1994, simply states: "The minute entry dated 5/13/94 denying Pltf's. motion to extend time to file a memorandum in support of his motion to alter or amend ... was intended to moot [the motion to alter or amend, the motion for leave to file a memorandum in support, and the motion for oral argument on the motion to alter or amend]." We note that the Central District of Illinois' Local Rule 7.1 requires every motion raising a question of law to be "accompanied by a memorandum of law including a brief statement of the specific points or propositions of law and supporting authorities on which the moving party relies, and identifying the rule under which the motion is filed." Thus perhaps Judge McDade regarded the motion to alter or amend as improperly filed under the Local Rule
 
 
 [2]
 Defendants also sought and were granted summary judgment on Serritella's conspiracy claim, which asserted that Officer Markum conspired with various other defendants--including Captain Keith Karsted of the Illinois State Police; Stephen Johnson, an Illinois State Police Master Sergeant; Terry Gainer, Director of the Illinois State Police; and others--to violate Serritella's Constitutional rights in retaliation for his representation of a probationary State Police officer in a wrongful discharge action. Thus after entry of the April 19, 1995, Order granting partial summary judgment, all that remained in Serritella's case was his claim for arrest without probable cause against Officer Markum
 
 
 [3]
 Steagall also moved for oral argument on the Order to Show Cause, suggesting that he had a due process right to confront his "accuser," Judge McDade, and that oral argument was necessary to ensure that he was able to "state his position and pose appropriate questions to the Court to ensure that he has adequately made his record on appeal in the event the Court were to rule adversely on the Order to Show Cause." Motion for Oral Argument on Order to Show Cause at 3
 
 
 [4]
 Here Steagall was invoking Ash v. Wallenmeyer, 879 F.2d 272, 274 (7th Cir.1989), wherein the Court remarked "[t]he federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process. The information is to be reflected in the framing of issues in the pretrial order, which supersedes the complaint."
 
 
 [5]
 Steagall moved to dismiss the criminal contempt proceedings on double jeopardy grounds. Judge McDade denied that motion. Then, on April 19, 1997, Judge McDade dismissed the criminal contempt charges sua sponte. Accordingly Steagall's separate appeal of Judge McDade's order denying dismissal of the criminal contempt proceedings was voluntarily dismissed on May 14, 1997
 
 
 [6]
 Although we decline to reach the merits of this untimely appeal, it should be noted that Steagall's concern that he was required to replead the dismissed claim lest he be found to have waived the issue on appeal has no foundation in the law of this Circuit (or any other of which we are aware). A panel of this Court squarely addressed the issue in Bastian v. Petren Resources Corp., 892 F.2d 680 (7th Cir.1990), certiorari denied, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270, where the panel explained that failure to replead a dismissed claim "is not waiver[.][I]t is prudence and economy [ ] for parties not to reassert a position that the trial judge has rejected. Had the plaintiffs repleaded their ... charge ..., the judge would have dismissed the charge, not only with prejudice but with annoyance." Id. at 683
 
 
 [7]
 See, e.g., Cheng v. GAF Corp., 713 F.2d 886 (2d Cir.1983); Sanko S.S. Co. v. Galin, 835 F.2d 51 (2d Cir.1987); Crookham v. Crookham, 914 F.2d 1027 (8th Cir.1990); Optyl Eyewear Fashion International Corporation v. Style Companies, 760 F.2d 1045, 1047 n. 1 (9th Cir.1985); Transamerica Commercial Fin. Corp. v. Banton, Inc., 970 F.2d 810 (11th Cir.1992); DeSisto College, Inc. v. Line, 888 F.2d 755 (11th Cir.1989), certiorari denied, 495 U.S. 952, 110 S.Ct. 2219, 109 L.Ed.2d 544