**Norman T. TOMPKINS, M.D. and Carolyn Tompkins, Plaintiffs,**

v.

**Thomas CYR, et al., Defendants.**

**No. 3–94–CV–0973–BD.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 7, 1998.

Windle Turley, Law Office of Windle Turley, Dallas, TX, Linda Turley, Law Office of Linda Turley, Dallas, TX, for Plaintiff.

William Charles Bundren, Law Office of William Charles Bundren, Coppell, TX, Kelly G. Rogers, Dallas, TX, Donovan Campbell, Rader Campbell Fisher & Pyke, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Twenty-seven defendants have filed three separate motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure and Rule 13 of the Texas Rules of Civil Procedure. Defendant Texans United for Life ("TUL") has also filed a motion for default judgment. For the reasons stated herein, the motions are denied.

### I.

### BACKGROUND

Plaintiffs Norman T. Tompkins and Carolyn Tompkins sued 38 different pro-life activists and organizations for intentional infliction of emotional distress, tortious interference, invasion of privacy, RICO violations, and related torts. Plaintiffs alleged that defendants harassed and intimidated them because of their beliefs concerning abortion. These activities included: (1) conducting loud and disruptive protests at their home, work, and church; (2) near-constant surveillance of their daily activities; (3) stalking them in their personal and business pursuits; (4) interfering with their employment; (5) placing abusive and threatening telephone calls; and (6) writing obscene and harassing letters. The case was tried to a jury on October 11–17, 1995. Plaintiffs obtained a verdict against eleven of the defendants and were awarded $8.5 million in actual and exemplary damages.

The other 27 defendants moved for sanctions shortly after this verdict was rendered. Defendants appear before the Court in three groups, each represented by a different attorney. W. Charles Bundren represents 21 defendants ("Bundren defendants").[1] Kelly

---

1. The "Bundren defendants" are: (1) Rescue America; (2) Society of Unborn Child Killers; (3) Marilyn Farinholt; (4) David Case; (5) Debra Case; (6) L.V. Spurlock; (7) Brenda Carol Spurlock; (8) Cynthia Brown; (9) Nicholas J. Wurth; (10) John Wesley Thompson; (11) Reginald Har-

ris; (12) Gregory John Hawley; (13) Ronald Zajac; (14) Dale Rasche; (15) Ilene Elizabeth Coventry; (16) James M. Fennel, Jr.; (17) David Hall; (18) Phyllis Hall; (19) Carol Hogan; (20)

G. Rogers represents five defendants ("Rogers defendants").[2] TUL appears separately and is represented by Donovan Campbell, Jr. and T. Wesley Holmes.

The defendants were dismissed from this lawsuit in various ways. Plaintiffs voluntarily nonsuited three defendants less than a month after they were sued. Plaintiffs dismissed sixteen other defendants on the first day of trial. Six more defendants were nonsuited after plaintiffs rested their case-in-chief, and one defendant successfully moved for judgment as a matter of law. Richard Blinn was exonerated by the jury. Laura Tellier was found liable for invasion of privacy, although the Court subsequently set aside this finding.

The prevailing defendants now seek sanctions against plaintiffs under Rule 11 of the Federal Rules of Civil Procedure. In addition, the Bundren defendants and TUL seek sanctions under Rule 13 of the Texas Rules of Civil Procedure. All three groups argue that plaintiffs failed to reasonably investigate their potential liability before suit was filed. The Bundren defendants further contend that the RICO, harassment, stalking, and intrusion claims were not supported by good faith legal arguments.

TUL also moves for the entry of a default judgment on its counterclaim for negligent failure to comply with Federal Rule 11 and Texas Rule 13. This counterclaim was raised in TUL's first amended answer filed on May 17, 1993. Plaintiffs timely filed a motion to dismiss but did not answer the counterclaim until November 20, 1995.

These motions were heard on February 5, 1996. The Court has considered the pleadings, evidence, and arguments of counsel. The issues have been fully briefed by the parties and all pending matters are ripe for determination.

Jonathan E. Hodges; and (21) Marco Antonio Medina, Sr.

**2.** The "Rogers defendants" are: (1) Richard Blinn; (2) Laura Tellier; (3) Joann Blinn; (4) Kevin Scott Capper; and (5) Carla Michele.

## II.

### SANCTIONS

All of the defendants contend that sanctions are appropriate under Rule 11 of the Federal Rule of Civil Procedure. The Bundren defendants and TUL also seek sanctions under Rule 13 of the Texas Rule of Civil Procedure. The Court will consider the applicability of the federal and state rules separately.

#### A. *Federal Rule 11*

■■■ The purpose of Rule 11 sanctions is to deter the filing of groundless or frivolous lawsuits. FED. R. CIV. P. 11 (advisory committee notes); *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 877 (5th Cir. 1988). All pleadings, motions, and other papers must comply with the rule. FED. R. CIV. P. 11(a). The signature of an attorney or unrepresented party on a document filed with the court constitutes a certification that: (1) he has conducted a reasonable inquiry into the facts that support the document; (2) he has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) the argument is not interposed for the purposes of delay, harassment, or increasing the cost of litigation. *Childs v. State Farm Mutual Automobile Insurance Co.,* 29 F.3d 1018, 1024 (5th Cir.1994); *Thomas,* 836 F.2d at 874. This is an objective, rather than a subjective, standard of reasonableness. *Childs,* 29 F.3d at 1024; *United States v. Alexander,* 981 F.2d 250, 252 (5th Cir.1993). Good faith is not a defense. *Childs,* 29 F.3d at 1024; *Thomas,* 836 F.2d at 873.

■■■ In this case, defendants attack certain allegations contained in a state court petition.[3] Rule 11 does not apply to conduct that occurred in state court prior to removal. *See Griffen v. City of Oklahoma City,* 3 F.3d 336, 339 (10th Cir.1993); *Foval v. First Na-*

**3.** Plaintiffs originally filed suit in state court. Defendants removed the case to federal court on May 17, 1994.

*tional Bank of Commerce,* 841 F.2d 126, 130 (5th Cir.1988). However, sanctions may be appropriate if a plaintiff is notified of the deficiency after the case is removed and fails to take corrective action. *Foval,* 841 F.2d at 130; *McCampbell v. KPMG Peat Marwick,* 982 F.Supp. 445, 447 n. 3 (N.D.Tex.1997) (Kaplan, M.J.). In addition, the pretrial order was filed in federal court. The pretrial order supersedes all prior pleadings and becomes the live pleading in a case that proceeds to trial. *See* FED. R. CIV. P. 16; *McGehee v. Certainteed Corp.,* 101 F.3d 1078, 1080 (5th Cir.1996). This document may also be the basis for sanctions under Rule 11. *See, e.g., Serritella v. Markum,* 119 F.3d 506, 513 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 566, 139 L.Ed.2d 406, (1997) (No. 97–732).

■ Nevertheless, the Court finds that the none of the defendants are entitled to sanctions under Rule 11. The federal rule provides that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." FED. R. CIV. P. 11(c)(1)(A). Defendants did not comply with this "safe harbor" requirement. The certificates of service on all three motions show that they were served on opposing counsel either the day they were filed or shortly before. Indeed, Charles Bundren admitted at the hearing that his motion did not conform to this provision of Rule 11.

For this reason, sanctions may not be imposed under Rule 11.

### B. *Texas Rule 13*

■ The Bundren defendants and TUL also seek sanctions under Rule 13 of the Texas Rules of Civil Procedure. Although this issue has never been addressed by the Fifth Circuit, other courts have held that federal judges may apply state sanctions rules to pleadings filed in state court prior to removal. *See, e.g. Griffen,* 3 F.3d at 341; *Harrison v. Luse,* 760 F.Supp. 1394, 1401 (D.Col.), *aff'd,* 951 F.2d 1259 (10th Cir.1991); *Schmitz v. Campbell–Mithun, Inc.,* 124 F.R.D. 189, 192 (N.D.Ill.1989). These courts reason that to hold otherwise would allow a plaintiff to escape censure for filing baseless

pleadings on the mere fortuity that the case was removed to federal court. *See Griffen,* 3 F.3d at 341. Moreover, because federal law does not apply to state court filings, the Court is not faced with a potential conflict that would force it to choose one body of law over the other. *See Griffen,* 3 F.3d at 341, *citing Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court finds these precedents persuasive. It therefore will analyze the motions under Texas Rule 13.

1.

The purpose of Rule 13 is to curb abusive pleadings and "insure that at the time the challenged pleading is filed the litigant's position was factually well grounded and legally tenable." *Home Owners Funding Corp. of America v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ). Toward this end, the rule provides in pertinent part:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper [and] that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

TEX. R. CIV. P. 13.

■ Rule 13 thus establishes a two-prong test. The pleading must be both groundless and either brought in bad faith or for the purpose of harassment. A pleading is groundless when it has "no basis in law or fact and [is] not warranted by good faith argument for the extension, modification, or reversal or existing law." TEX. R. CIV. P. 13; *see Stites v. Gillum,* 872 S.W.2d 786, 788 (Tex.App.—Fort Worth 1994, writ denied). The determination whether a pleading is groundless must be based on the facts and circumstances as they existed at the time the document was filed. *Tarrant County v. Chancey,* 942 S.W.2d 151, 155 (Tex.App.—Fort Worth 1997, no writ); *Trimble v. Itz,* 898 S.W.2d 370, 373 (Tex.App.—San Antonio), *writ denied with opinion,* 906 S.W.2d 481 (Tex.1995). A pleading is brought in bad

faith if it was motivated by malicious intent or discriminatory purpose. *See Stites,* 872 S.W.2d at 795. The evidence must be sufficient to overcome the presumption that pleadings are filed in good faith. TEX. R. CIV. P. 13; *GTE Communications v. Tanner,* 856 S.W.2d 725, 731 (Tex.1993).

### 2.

■ TUL argues that it should have never been sued and that plaintiffs did not conduct a reasonable factual inquiry before filing their petition in state court. The record shows that TUL was joined as a party-defendant in May 1993. Plaintiffs nonsuited their claims against this defendant three weeks later. TUL now seeks over $11,000 in attorney's fees and expenses incurred as a result of their limited participation in this litigation.

The first issue is whether counsel for plaintiffs conducted a reasonable inquiry. Linda Turley explained that she named TUL as a defendant because Thomas Cyr, Phillip Benham, and others testified at their depositions that they "participated" in the organization. She also received an anonymous press release indicating that TUL was involved in some of the same activities as the other defendants. Turley admitted that no one contacted TUL to verify this information before suit was filed. However, she believed that any such contact would be unethical.[4] TUL did not challenge or impeach this testimony.

The Court concludes that Turley made a reasonable inquiry before naming TUL as a defendant. She obtained information from other defendants and anonymous sources which led her to believe that TUL was involved in a harassment campaign against her clients. Although Turley did not confront TUL with this information prior to filing suit, she was not required to do so. Indeed, the Court questions whether anyone would acknowledge liability under such circumstances. Moreover, Turley believed that she was ethically prohibited from contacting a potential defendant directly. The Court finds this testimony credible and her explanation persuasive.

Nor has TUL established that plaintiffs' claims were groundless. Thomas Cyr, Phillip Benham, and other key defendants testified at their depositions that they "participated" in the organization. Based on this information, it was reasonable for counsel to conclude that TUL was also liable to plaintiffs. Moreover, even if the initial filing was groundless, there is no evidence that suit was brought in bad faith or for the purpose of harassment. Any malicious intent is negated by the fact that plaintiffs dismissed TUL less than three weeks after suit was filed.

TUL also seeks sanctions against plaintiffs because it was sued by two other parties. Greg Bevel and Bruce Buchanan intervened in this lawsuit and obtained a temporary injunction in connection with demonstrations at their homes and churches. TUL argues that it would have never been named by the intervenors had plaintiffs not sued them first. This argument borders on frivolous. Even if true, plaintiffs cannot be held accountable for the actions of Bevel and Buchanan. Those parties and their lawyers had an independent duty to avoid filing baseless pleadings. State law does not authorize the imposition of sanctions under these circumstances.

For these reasons, TUL's motion for sanctions under Rule 13 is denied.

### 3.

■ The Bundren defendants contend that plaintiffs violated Rule 13 in two respects. First, defendants complain that the allegations contained in the state court petition are global. Stated differently, they object to the fact that plaintiffs do not specify which defendant is liable under each theory of recovery, but rather implicate all of the defendants generally. The Bundren defendants proffered evidence that they did not

---

4. Rule 4.02 of the Texas Disciplinary Rules of Professional Conduct provides that "a lawyer shall not communicate or encourage another to communicate about the subject matter of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer ..." TEX. DISCIPLIN-ARY R. PROF. CONDUCT 4.02(a), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G app. (Vernon Supp.1997). It is not clear whether TUL was represented by counsel before suit was filed. In any event, Turley believed that she was precluded from contacting the organization under this disciplinary rule.

engage in stalking, telephone or mail harassment, or any other type of egregious conduct. At most, these defendants participated in peaceful protests at plaintiffs' home. Defendants further contend that the harassment, stalking, intrusion, and RICO claims were legally untenable and not warranted by a good faith argument for the extension, modification, or reversal of existing law.

### a.

Linda Turley testified about her attempts to investigate the involvement of the Bundren defendants. She explained that the demonstrations at plaintiffs' residence continued even after the state court issued a temporary injunction. Several protestors told the police that they had a right to continue because they were not parties to the order. Plaintiffs hired an investigator to determine the identity of these protestors. The investigator compiled a list of individuals who participated in at least two demonstrations. Turley also spoke with the Dallas police and security personnel at Presbyterian Hospital and the Boy Scouts of America headquarters to help identify the protestors. She reviewed photographs and videotapes of the various demonstrations and asked her investigator to check license plates of unknown cars parked in plaintiffs' neighborhood. Based on facts uncovered by this investigation, plaintiffs joined the Bundren defendants as parties to this suit.

Clearly, these efforts were more than sufficient to constitute a reasonable inquiry into the factual basis for those claims that turned on picketing activity. However, defendants argue that plaintiffs' *other* claims were not supported by facts known to counsel at the time the state court petition was filed. The Court disagrees. Turley admitted that she did not know the full extent of defendants' involvement in these other activities when they were first sued. Nevertheless, she said that she believed all the defendants were acting as a group whose activities were being coordinated by Dallas PLAN. The Court finds this explanation reasonable in light of the facts known to counsel at the time. This same reasonable belief supports the conclusion that the claims were not groundless.

Further, the Court finds no basis for concluding that global accusations against the defendants constitute bad faith or harassment. Again, plaintiffs reasonably believed that all the defendants were acting in concert to violate their rights. Many of the actions perpetrated against them were anonymous. Plaintiffs did not act in bad faith by inferring that those who picketed their home also participated in more egregious forms of harassment.

### b.

■ The Bundren defendants further contend that the harassment, stalking, intrusion, and RICO claims were legally untenable. Rule 13 requires that legal arguments be well-grounded in existing law or based on a good faith argument for the extension, modification, or reversal of existing law. TEX. R. CIV. P. 13. However, Rule 13 does not prohibit creative lawyering:

> Innovative changes in the law or applications of the law must by necessity come from creative and innovative sources. For the most part these changes resulted from lawyers advocating positions that may have had little or no basis in existing law. By their very definition, changes in the law are different from and in disagreement with what has been historically accepted. We cannot allow rule 13 to have a chilling effect on those who seek change in legal precedent. Like other advocates of change, lawyers seeking change may meet with able opposition, even vehement disagreement, and they may even fail at first. They may never succeed, but they must be given an opportunity to try without fear of unjustified persecution.

*Dyson Descendant Corp. v. Sonat Exploration Co.*, 861 S.W.2d 942, 951 (Tex.App.— Houston [1st Dist.] 1993, no writ) (footnote omitted).

Defendants argue that the RICO claim is deficient because plaintiffs failed to allege certain elements of the cause of action. However, the mere failure to properly allege a cause of action does not compel the conclusion that the claim would not be legally tenable if properly pleaded. Indeed, similarly situated plaintiffs continue to seek recovery under the civil RICO statute. *See, e.g., National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Palmetto State Medical*

*Center, Inc. v. Operation Lifeline*, 117 F.3d 142 (4th Cir.1997). No sanctions are warranted on this basis.

The Court further finds that plaintiffs' claims for stalking, harassment, and intrusion were based on good faith legal arguments. None of these purported causes of action has been affirmatively prohibited or abolished. *Cf. Stites*, 872 S.W.2d at 790 (attorney appropriately sanctioned for bringing claim for alienation of affection where Texas legislature had previously abolished that cause of action). Indeed, there is some older caselaw in the debt collection context announcing that "excessive harassment resulting in physical illness is a tort." *See Houston–American Life Insurance v. Tate*, 358 S.W.2d 645, 653 (Tex.Civ.App.—Waco 1962, no writ), *citing Duty v. General Finance Co.*, 154 Tex. 16, 273 S.W.2d 64 (1954). Defendants correctly note that Texas law does not currently recognize a cause of action for stalking or intrusion. However, plaintiffs certainly were within the realm of permissible advocacy to argue that the facts of this case warranted their recognition.

The claims advanced by plaintiff were either well-grounded in existing law or based on a good faith argument for the extension, modification, or reversal of established precedent. Accordingly, the Bundren defendants' motion for sanctions under Rule 13 is denied.

### III.

### *DEFAULT JUDGMENT*

■■■ The final matter before the Court is TUL's motion for default judgment. A district court may enter a default judgment when "a party against whom affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). This is a drastic remedy not generally favored by the courts. *See Sun Bank of Ocala v. Pelican Homestead and Savings Association*, 874 F.2d 274, 276 (5th Cir.1989). The Court may consider a number of factors in exercising its discretion whether to grant or deny a default judgment. *See generally* 10 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 at 423–27 (2d ed.1986). However, default judgments should only be entered in extreme situations where there is "a clear record of delay or

contumacious conduct." *Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir.1978).

■■■ One of the factors the Court should consider is whether it would later be required to set aside the default. *See* 10 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2685 at 427; *see also* FED. R. CIV. P. 55. That consideration is particularly relevant here because TUL has failed to state a viable claim for relief. TUL's counterclaim is based on plaintiffs' alleged negligent failure to comply with Federal Rule 11 and Texas Rule 13. The Court is unaware of any authority supporting a separate and independent cause of action for negligence under these circumstances. Indeed, this claim undermines the basic premise of the sanctions rules. These rules were enacted to protect the integrity of the judicial system. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991); *Estate of Calloway v. Marvel Entertainment Group*, 9 F.3d 237, 241 (2d Cir. 1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 459 (1994). They do "not create an entitlement in adverse parties to compensatory damages or attorney's fees." *Estate of Calloway*, 9 F.3d at 241, *citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990). The Court therefore finds that there is no cause of action for negligence based on a violation of Federal Rule 11 or Texas Rule 13. Granting a default judgment as to this non-existent claim would be an exercise in futility. Accordingly, TUL's motion is denied.

### IV.

### *CONCLUSION*

Defendants' motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure are denied. The Bundren defendants' and TUL's motions for sanctions under Rule 13 of the Texas Rules of Civil Procedure are denied. TUL's motion for default judgment is denied.

SO ORDERED.